UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN CHARLES AYO                                    CIVIL ACTION

VERSUS                                               NO. 08-963

OFFICER PAUL SIMONEAUX ET AL.                        SECTION "F" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Glenn Charles Ayo, is a prisoner currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputies Paul Simoneaux and George McCoy; Sheriff's Detective Danny Jewel, Jr.; attorneys Marquita Matthews and Evans Schmidt of the Jefferson Parish Indigent Defender Program; Jefferson Parish Assistant District Attorney Shannon Swaim; and Baptiste DeBroy, identified by plaintiff as the victim who testified at his criminal trial.  Ayo amended his complaint to add another defendant, James T. Daly, a "screener for the Louisiana Attorney Disciplinary Counsel."  Plaintiff asserts claims of conspiracy and violation of his constitutional rights in connection with his arrest on January 7, 2007 and his trial and conviction on November 27 and 28, 2007.  Record Doc. Nos. 2 (Complaint), 5 (Amended Complaint).

On March 25, 2008, Ayo filed a "Petition for Injunctive Relief and Written Objection," Record Doc. No. 7, in which he asks the court to direct the Department of Corrections ("DOC") to lift its "ambiguously placed" hold on his prison account. This report contains a recommendation for disposition of plaintiff's case as a whole and his motion for injunctive relief pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff alleges in his complaint that Deputies Simoneaux, McCoy and Jewel violated his constitutional rights when they conspired with other public officials to commit malfeasance, fraud and perjury. Specifically, plaintiff states that, contrary to their authority and outside their jurisdiction, Simoneaux "went on a roving patrol . . . 'forcibly seizing' every (white male) encountered based solely on their gender and race," and McCoy "went on an exploration for evidence" and executed a warrantless search. Ayo asserts that the officers violated his Fourth Amendment constitutional right to "freedom from (overbearing) intrusive police encounters and 'unlawful' seizure of his person on <u>less</u> than reasonable cause of suspicious criminal activity," and that they submitted false police reports and gave perjured testimony at a "preliminary examination [probable cause] and suppression hearing" and at his criminal trial. He further asserts that Deputies Simoneaux and Jewel testified concerning a non-existing radio transmission "erroneously justifying the 'unlawful' arrest and false imprisonment of plaintiff." Plaintiff states that the officers' testimony "exhibit[ed] a perfect text-book

2

case of perjury of the first magnitude and <u>no</u> amount of want can rectify the prejudice" to his trial.  Record Doc. No. 2 at pp. 5-9.  He alleges that he was unjustly convicted "based solely on 'fraud and perjury,' violating [his] Eighth Amendment right to freedom from cruel and unusual false imprisonment [punishment] and, his Fourteenth Amendment right to an unbias[ed] and impartial trial and due process of equal protection of law." <u>Id.</u> at p. 6.

Plaintiff alleges that public defenders Matthews and Schmidt and Assistant District Attorney Swaim conspired with other public officials to commit malfeasance "by way of malpractice, to wit:  fraud and perjury, violating his constitutional rights."  Ayo asserts that Matthews and Schmidt "willfully neglected" to perform their required duty and represent plaintiff to the best of their ability, "intentionally creating irreparable damage and loss of 'primary' defense," when they failed to respond to his repeated letters requesting that they come or send a defense investigator to the jail to obtain the name and address of an alibi witness.  Plaintiff states that Matthews "attempted to circumvent an ineffective assistance of counsel claim by committing (perjury)" when she erroneously informed the court of a "<u>non</u> existing 'attorney client conflict.'"  He further asserts that Matthews and Swaim conspired "to create a bias[ed] and partial trial" when they both requested that Schmidt be appointed to represent him.  He alleges that Schmidt failed to subpoena his alibi witness, move for a continuance "to secure such vital witnesses,"

3

argue a "single point of law" at a suppression hearing, introduce material evidence and "perform his required duty of defending" plaintiff.  Id. at pp. 10-20.

Ayo claims that Schmidt failed to bring to the trial court's attention and move for mistrial when, "'[d]espite [the judge's] order to clear the hall for my return to the courtroom after lunch, Mrs. Swaim [Assistant D.A.] and allege[d] victim were deliberately positioned in hall by jail door to procure positive identification.'"  He alleges that Schmidt failed to "object to the fraudulent in court identification process," although DeBroy, the apparent crime victim, "provided identification with a degree of skepticism" on the day of the crime and could not identify plaintiff at a hearing as the perpetrator of the crime from "just fifteen (15) feet away," but "positively identified plaintiff [at trial] (because that was who he was shown coming from jail entrance)."  Id. at pp. 16-17.

Plaintiff asserts that Assistant District Attorney Swaim "knowingly and intelligently elicit[ed] perjured testimony" at a preliminary hearing and trial concerning a "non existing 'false' radio transmission to fraudulently support probable cause, thus erroneously justifying an otherwise "unlawful' arrest and false imprisonment."  Id. at p. 18.  He further states that Swaim conspired to "convict an 'innocent' man by any means whatsoever, including deliberate malfeasance" when she ignored the judge's order at trial to clear the halls of jurors and witnesses so that plaintiff might return from jail and "deliberately positioned" herself and the victim in the hallway by the door to the jail "to

4

procure an 'unlawful' positive identification." Id. at p. 19.  Ayo also alleges that Swaim

committed malfeasance and tampered with witnesses, resulting in one witness's "sudden

case of 'amnesia'" and another's absence at trial, "to create a bias[ed] and partial trial"

that led to "plaintiff's unjust conviction based on 'fraud.'" He contends that these actions

violated his Sixth Amendment right to a fair and impartial trial, Eighth Amendment right

to freedom from cruel and unusual false imprisonment, and Fourteenth Amendment right

to due process and equal protection of the law.  Id. at p. 19-20.

Plaintiff states that DeBroy was "the victim of a robbery January 7, 2007" and

identified Ayo "on the day of [the] crime in question January 7, 2007" and at his criminal

trial in November 2007.  Record Doc. No. 2 at pp. 16, 19, 21.  He contends that DeBroy

conspired with the Jefferson Parish police officers, the Assistant District Attorney and

State investigators to "'willfully' commit malfeasance, to wit:  fraud and perjury,

violating plaintiff's constitutional right(s)."   Ayo states that the conspiracy was

"consummated and documented into tangible evidence" when DeBroy "knowing[ly] and

intelligently offered perjured testimony at the preliminary examination (probable cause)

and suppression hearing" on August 16, 2007 and at trial on November 27 and 28, 2007.

Id. at p. 21.

In his amended complaint, Record Doc. No. 5, Ayo alleges that Daly is a "screener

for the Louisiana Attorney Disciplinary Counsel" who conspired "with the same

5

Jefferson Parish official(s) to 'willfully' commit malfeasance, to wit, conceal the crime(s) of fraud and perjury, violating plaintiff's constitutional rights." Id. at p. 24.  Plaintiff asserts that Daly failed to act upon his complaints to the bar association and "ridiculously deemed" Matthews's perjury "to evade an ineffective assistance [malpractice] claim" as "'not involv[ing] attorney misconduct or unethical activity'" and "unsuccessfully attempted to conceal malfeasance of tampering with witness[es]" when Daly deemed malicious prosecution and "known 'perjured' testimony as 'fail[ing] to state any specific acts of misconduct by this attorney.'"  Plaintiff asserts that Daly's failure to act upon his bar complaints caused him "irreparable damage and loss of 'primary' alibi witness and fundamental unjust conviction." Id. at pp. 24, 25.

Ayo requests that the court grant "relief with the triggering date of 'perjury' contributing to false imprisonment suit running from finalizing of claim nunc pro tunc January 7, 2007." He seeks $396,000 in damages "'plus' lost wages(s), fee(s), and costs" from each defendant; the termination of Deputies Simoneaux, McCoy and Jewel from the Sheriff's Office; and the disbarment of Matthews, Schmidt, Swaim and Daly.  Id. at pp. 24-25; Amended Complaint, Record Doc. No. 5 at ¶ V, pp. 27-28.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992).  An in forma pauperis complaint which is legally frivolous, fails to state a claim or seeks monetary relief against a defendant who is immune from such relief may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) because it fails to state a cognizable Section 1983 claim under the broadest reading.[1]  In addition, the habeas corpus aspects of plaintiff's claims must be dismissed without prejudice because plaintiff has brought the claims in the wrong proceeding and has not exhausted his state court remedies.

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

8

II.     SECTION 1983 CLAIMS

   A.     Prosecutorial Immunity

   Jefferson Parish Assistant District Attorney Swaim has been named as defendant in this case based solely upon her actions as a prosecutor in the state court criminal proceedings against Ayo.  However, the assistant district attorney is immune from suit for damages in this instance.

   Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995).  It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution.  Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999); Graves v. Hampton, 1 F.3d 315, 318 (5th Cir. 1993), abrogated in part on other grounds by Arvie v. Broussard, 42 F.3d 249, 250 (5th Cir. 1994).  This immunity applies to a prosecutor's actions "in initiating prosecution and in carrying the case through the judicial process."  Id.; accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Mowbray v. Cameron County, 274 F.3d 269, 277 (5th Cir. 2001).

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999) (quotations omitted) (citing Stump, 435 U.S. at 356-57; Butz v. Economou, 438 U.S. 478, 510 (1978)).

In the instant case, all of Swaim's actions of which Ayo complains "involve the prosecutors' choosing . . . witnesses, preparing those witnesses for trial, and performing the state's trial duties.  [T]hese acts fall under the protection of absolute immunity . . . ." Mowbray, 274 F.3d at 277 (citing Buckley, 509 U.S. at 272-73; Imbler, 424 U.S. at 431 n.33).  Therefore, plaintiff's claims for damages against Swaim must be dismissed.

While prosecutors enjoy absolute immunity from damages liability, they are not immune from Section 1983 suits seeking injunctive relief.  Supreme Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-37 (1980) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)).  In the instant case, Ayo seeks monetary damages, but also seeks

the disbarment of Assistant District Attorney Swaim.  However, this court has no jurisdiction to hear such a claim.

To the extent that plaintiff seeks injunctive relief disbarring an attorney from the practice of law in the state courts, that claim must be brought before the Louisiana Supreme Court, which "has exclusive original jurisdiction of disciplinary proceedings against a member of the bar."  La. Const. art. V, § 5(B).  "Under that jurisdiction and its inherent judicial power, the supreme court has exclusive authority to regulate the practice of law."  Jarrell v. Miller, 882 So. 2d 639, 649 (La .App. 2d Cir. 2004) (Caraway, J., concurring) (citing La. Const. art. V, § 5(B); O'Rourke v. Cairns, 683 So. 2d 697 (La. 1996)).  Only the Louisiana Supreme Court has the authority to order the disbarment of an attorney from the practice of law in the state courts of Louisiana.

Accordingly, plaintiff's claim for injunctive relief against Swaim must also be dismissed.

B.    Defense Attorneys Are Not State Actors

Plaintiff fails to state a claim for relief under Section 1983 against Matthews and Schmidt, the public defenders who represented him in his state court criminal proceedings.  To state a claim under Section 1983, plaintiff must show "(1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) by one acting under color of state law."  Mississippi Women's Med. Clinic v. McMillan, 866

11

F.2d 788, 791 (5th Cir. 1989) (emphasis added); <u>accord</u> <u>Morris v. Dearborne</u>, 181 F.3d 657, 666 n.6 (5th Cir. 1999).  Plaintiff must show that defendants' actions are "fairly attributable to the state."  <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988).  Neither a public defender nor a privately retained criminal defense attorney is generally considered to be a state actor.  <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Small v. Dallas County</u>, 170 Fed. Appx. 943, 2006 WL 925500, at *1 (5th Cir. 2006); <u>Hudson v. Hughes</u>, 98 F.3d 868, 873 (5th Cir. 1996).  Because Matthews and Schmidt are not state actors, plaintiff's Section 1983 claims against them have no basis in federal law and must be dismissed for failure to state a cognizable claim.

C.    <u>Witness Immunity</u>

To the extent plaintiff asserts claims against DeBroy based on this defendant's actions in testifying against Ayo at his criminal trial, DeBroy is also immune from suit. "[W]itnesses are entitled to absolute immunity against § 1983 suits based on their testimony in a criminal trial . . . ." <u>Mowbray</u>, 274 F.3d at 277 (citing <u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983)). Thus, "absolute witness immunity bars § 1983 suits for conspiracy to commit perjury." <u>Id.</u> at 277-78; <u>accord</u> <u>Ibarra v. Harris County</u>, 243 Fed. Appx. 830, 2007 WL 1879176, at *6 (5th Cir. 2007) (citing <u>Kinney v. Weaver</u>, 367 F.3d 337, 352 (5th Cir. 2004) (en banc)).  In reaching that conclusion, the Fifth Circuit noted:

> As a matter of logic, a person may not be prosecuted for conspiring to commit an act that he may perform with impunity. [Witnesses] cannot be liable under § 1983 for conspiracy to commit perjury where § 1983 grants them absolute immunity for that act.
>
> Moreover, allowing such conspiracy suits would permit most § 1983 perjury suits to be restyled as § 1983 claims for conspiracy to commit perjury, because a witness rarely prepares her testimony on her own.

Mowbray, 274 F.3d at 277 (quotation, citations and footnote omitted).

Accordingly, plaintiff's claims against DeBroy are frivolous as a matter of law and must be dismissed.

### D.   No Jurisdiction over State Disciplinary Proceedings

Ayo asserts a claim against Daly, a "screener for the Louisiana Attorney Disciplinary Counsel," arising out of plaintiff's filing of a disciplinary complaint against Matthews for alleged malpractice and perjury. Plaintiff's amended complaint, apparently quoting from a decision of Louisiana's Office of Disciplinary Counsel, states that Daly concluded that Ayo's complaint against Matthews "'does not involve attorney misconduct or unethical activity,'" Record Doc. No. 5, Amended Complaint, at p. 24 (emphasis added by plaintiff), and "'fails to state any specific acts of misconduct by this attorney.'" Id. at p. 25. Ayo alleges that Daly's conduct amounted to a conspiracy to "conceal the crime(s) of fraud and perjury, violating plaintiff's constitutional rights." Id. at p. 24.

As previously stated, the Louisiana Supreme Court "has exclusive original jurisdiction of disciplinary proceedings against a member of the bar." La. Const. art. V, § 5(B). Pursuant to its "exclusive authority to regulate the practice of law," Jarrell, 882 So. 2d at 649, the Louisiana Supreme Court adopted Rule XIX regarding lawyer disciplinary enforcement. Supreme Court Rule XIX created a statewide agency, the Attorney Disciplinary Board (the "Board"), to administer the lawyer discipline system. La. S. Ct. R. XIX § 2(A). "Thus, the handling of complaints concerning attorneys is a quasi-judicial function under the original and exclusive jurisdiction of the Louisiana Supreme Court." Alston v. Stamps, 877 So. 2d 259, 263 (La. App. 2d Cir. 2004) (citing Louisiana State Bar Ass'n v. Chatelain, 513 So. 2d 1178 (La. 1987); Herbert v. Regan, 522 So. 2d 1157 (La. App. 4th Cir. 1988)).

The Office of Disciplinary Counsel performs the prosecutorial functions of the Board, including screening and investigating all information coming to the attention of the Board that, if true, would be grounds for disciplining an attorney. La. S. Ct. R. XIX § 4(B)(1), (2). "If the information, if true, would not constitute misconduct . . . , the matter shall be dismissed." Id. § 11(A). According to Ayo's amended complaint in this court, his disciplinary complaint against Matthews was dismissed at the screening stage because it did not involve attorney misconduct or unethical activity. Ayo obviously received notice of the dismissal, as he quotes from it in his amended complaint.

14

Under Rule XIX, Ayo could appeal the dismissal of his disciplinary complaint to a hearing committee of the Board.

> The complainant shall be notified of the disposition of a matter following investigation and of his or her right to file a written request for review of disciplinary counsel's dismissal within thirty days of receipt of notice of disposition . . . .  Disciplinary counsel's dismissal shall be reviewed by a hearing committee . . . upon the complainant's request for review.  The hearing committee may approve, modify or disapprove the appealed dismissal or direct that the matter be investigated further.

Id. § 11(B)(3).  Ayo does not state that he appealed the dismissal of his complaint to a hearing committee of the Board.

"In general, federal courts lack jurisdiction to review state-court disciplinary proceedings.  If not satisfied with resolution of a complaint filed with [the Board, plaintiff] had the option to appeal to" a hearing committee of the Louisiana Supreme Court.  Fuller v. McKeeman, 249 Fed. Appx. 987, 2007 WL 2948574, at *1 (5th Cir. 2007), pet. for cert. filed, No. 07-10159 (Jan. 28, 2008) (citing District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 476 (1983); Howell v. State Bar, 710 F.2d 1075, 1076 (5th Cir. 1983)).

Ayo "'cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief.' Similarly, a federal complainant cannot re-litigate issues that should have been raised in state court . . . by casting a complaint as a civil rights violation."  Fuller v. McKeeman,

15

No. A-07-CA-440 LY, 2007 WL 1731140, at *2 (W.D. Tex. June 13, 2007), aff'd, 2007

WL 2948574 (5th Cir. 2007), pet. for cert. filed, No. 07-10159 (Jan. 28, 2008) (quoting

United States v. Shepherd, 23 F.3d 923, 924 (5th Cir. 1994)) (citing Feldman, 460 U.S.

at 462; Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Liedtke v. State Bar, 18 F.3d

315, 317 (5th Cir. 1994)); accord Riley v. Louisiana State Bar Ass'n, 214 Fed. Appx.

456, 2007 WL 178108, at *2 (5th Cir. 2007).

Because this court lacks jurisdiction to hear Ayo's claims against Daly, the claims

are frivolous and subject to dismissal.

E.   *Heck* Application to Section 1983 Claims

Read broadly, Ayo's complaint may be seeking declaratory and injunctive relief

as to his claims.  In either case, his claims must be dismissed at this time.  In Heck, the

United States Supreme Court held that a civil action for alleged civil rights violations that

attacks the validity of state confinement, which has not been reversed, expunged,

invalidated, or called into question by a federal court's issuance of a writ of habeas

corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for

damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted).  Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied <u>Heck</u> in cases in which the plaintiff seeks injunctive relief.  <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S. Ct. 1584 (1997)).

Plaintiff's claims are clearly connected to the validity of his present confinement. <u>Heck</u>, 512 U.S. at 479; <u>Hamilton v. Lyons</u>, 74 F.3d 99, 103 (5th Cir. 1997); <u>Boyd v. Biggers</u>, 31 F.3d 279, 283 (5th Cir. 1994).  Ayo's written submissions indicate that he was convicted by a jury in November 2007 and, at the time of filing this complaint, was in custody in the Hunt Correctional Center in St. Gabriel, Louisiana.[2] Record Doc. No. 2, Complaint at ¶¶ III(A) and IV.  His sentence has not been set aside in any of the ways described in <u>Heck</u>.  Thus, any claims for relief that he asserts attacking his conviction and continued confinement are premature and must be dismissed.  As the Fifth Circuit has

---

[2]Plaintiff recently advised the court that he has been transferred to the Louisiana State Penitentiary in Angola, Louisiana. Record Doc. No. 6.

noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

III.   HABEAS CORPUS CLAIMS

As noted above, Ayo's complaint in part challenges the very fact and duration of his confinement.  Although his suit is styled as a civil rights action under 42 U.S.C. § 1983 and filed on a form normally reserved for Section 1983 complaints, he clearly challenges the validity of his confinement and may be seeking his release.  This Section 1983 complaint is not the proper action in which to assert these habeas corpus claims.

A prisoner who challenges the very fact or duration of his physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under Section 1983.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Clarke v. Stalder, 121 F.3d 222, 226 (5th Cir.), reh'g en banc granted & opin. vacated, 133 F.3d 940 (5th Cir. 1997), rev'd in part on other grounds & opin. reinstated in relevant part, 154 F.3d 186, 187 (5th Cir. 1998) (en banc); Caldwell v. Line, 679 F.2d 494, 496 (5th Cir. 1982).  Thus, although Ayo filed his complaint on a form reserved for Section 1983 complaints, his claims invoke habeas corpus type relief because he challenges the fact of his confinement.  Clarke, 121 F.3d at 226; Hernandez v. Spencer, 780 F.2d 504, 504 (5th Cir. 1986).

18

A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court before requesting federal collateral relief. Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); Nobles v. Johnson, 127 F.3d 409, 419 (5th Cir. 1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20)).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement. . . . This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Picard, 404 U.S. at 275-78; Nobles, 127 F.3d at 420). A court may notice sua sponte the lack of exhaustion. McGee v. Estelle, 722 F.2d 1206, 1214 (5th Cir. 1984) (en banc).

In the present case, Ayo does not allege and there is no proof that he has exhausted his state court remedies in connection with his claims in this case. On the contrary, on the first page of his complaint, Ayo indicates that he has not begun any other civil lawsuits in state or federal court dealing with the same facts involved in this action.

19

Record Doc. No. 2, at p.1, ¶ I(A).  Furthermore, research by staff of the undersigned magistrate judge with the Louisiana Supreme Court clerk's office has confirmed that plaintiff has <u>not</u> sought review of the validity of his conviction in the Louisiana Supreme Court.

Accordingly, plaintiff's claims seeking habeas corpus relief must be dismissed without prejudice to allow him to return to this court with a properly filed habeas corpus petition, if appropriate and if he has in fact exhausted all available state court remedies.

IV.    <u>PENDING MOTION FOR INJUNCTIVE RELIEF</u>

As mentioned in the introduction to this report, Ayo filed a motion for an injunction.  Record Doc. No. 7.  He alleges in his motion that, although adequate funds were available from his inmate account, the DOC ignored the court's February 22, 2008 order in the instant case, Record Doc. No. 3, concerning payment of the filing fee, "impeding process and plaintiff's civil liberties."  <u>Id.</u> at pp. 1, 2.  He further states that, contrary to the holding of the Fifth Circuit in <u>Ayo v. Bathey</u>, 106 F.3d 98, 101 (5th Cir. 1997), concerning payment of that court's filing fee, the DOC "ambiguously placed a hold on Ayo's 'entire' prison account, freezing the remaining 80% inmate(s) are entitled to keep/spend monthly."  <u>Id.</u> at p. 2.  He contends that "the current insubordination of the DOC can be construed as nothing less than the malicious deliberate indifference to frustrate the order of court(s)."  <u>Id.</u>

20

Plaintiff seeks injunctive relief in the form of an order "directing the DOC to lift, forever placing <u>no</u> hold(s) on entire inmate account(s);  compel[ling] the DOC to perform their administrative duty in a timely fashion, . . ; and instead of 'repeatedly' wasting judicial resources elementary [sic] spelling out to the DOC case-by-case year-after-year how the (partial payment) provisions of §1915(B) operate, impose fine(s) of $250 per day running <u>nunc pro tunc</u> February 22, 2008."  <u>Id.</u> at pp. 2, 3.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party who seeks a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held.  A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause defendants; <u>and</u> (4) that the injunction will not disserve the public interest.  <u>Sugar Busters LLC v. Brennan</u>, 177 F.3d 258, 264 (5th Cir. 1999).  The requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued."  <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, plaintiff's written submissions and the record to date establish that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction.  Although his motion alleges that the DOC has ignored the court's orders concerning payment of the filing fee and placed a hold on his entire prison account, these wholly unsubstantiated allegations are the rankest form of speculation, and Ayo has <u>not</u> established that any injury he may suffer in the future would be irreparable.  Any cognizable injury that he may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits."  <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600.  Although plaintiff's allegations must be accepted as true for the initial screening process required for such cases, 28 U.S.C. § 1915A; <u>Martin v. Scott</u>, 156 F.3d 578 (5th Cir. 1998), and I have done so above, no such requirement applies to his request for injunctive relief.  Ayo has not clearly alleged at this early stage of the proceedings that a violation of his clearly established constitutional rights has occurred.  Moreover, because Ayo seeks an

injunction, injunctive relief interfering with the administration of prison functions by the court, without justification, would disserve the public interest.

For all of these reasons, plaintiff's motion for injunctive relief should be **DENIED**.

### RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint asserting claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**, either as legally frivolous, for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2), or under Heck.

**IT IS FURTHER RECOMMENDED** that any habeas corpus claims asserted in this Section 1983 complaint be **DISMISSED WITHOUT PREJUDICE** to plaintiff's ability to file a proper habeas corpus proceeding after exhaustion of state court remedies.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for injunctive relief be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __16th__ day of May, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE